Good morning, Your Honors. My name is Robert Powell, appearing here on behalf of Mr. Amedin. I would like to reserve two minutes by way of rebuttal. Mr. Amedin, the issue in this case, Mr. Amedin is charged with being deportable for having committed immigration fraud because the allegation is he did not disclose the fact that he had a prior marriage at the time that he obtained his immigrant visa, which was based on a second marriage to a U.S. citizen. Our contention is that the Immigration Service, the Department of Homeland Security, has not established by clear and convincing evidence that Mr. Amedin is deportable as charged. There are two elements that need to be established in order to establish deportability. First of all, that there was a willful misrepresentation. That is to say, the second, that that misrepresentation was material. Now, first of all, it's so there's nothing in the record. It's clear from the record that Mr. Amedin did not make a false statement. At best, the Immigration Service can argue that he failed to disclose some information. If you look at the application forms that were submitted ---- Well, there wasn't an accurate statement. There wasn't an ---- there was an ---- not complete, I guess. There was a blank that was not filled in. And then the second thing that the government points to is the N.A., the not applicable. Correct. But isn't the real question whether or not it was material? Well, again, I think there are two elements that have to be proven. That first element, that there was a willful misrepresentation, that there was not a misrepresentation that was made. And there's a precedent decision on point on the Salazar case, which with respect to the materiality issue, which is a second argument, an alternative argument, if you will, the test is whether or not there's a ---- that the ---- well, the government has to show that there's a fair inference that if complete evidence was disclosed, then there would be a disqualifying fact. So at the time he merit ---- so let's say at the time he completed his application, when was that, 2000 and ---- That was in 1996. 1996. And he'd already married his U.S. citizen wife. That's right. He had been ---- So at the time he married his U.S. citizen wife, was ---- was ---- is there ---- I guess it's compelling evidence or roughly at the standard that the government had to meet that his customary marriage and divorce would have been sufficient, would have been recognized? Yeah. I think in order for the government to meet its burden of proof, it would have to show, first of all, that that first marriage or that first relationship was a valid marriage for immigration ---- for U.S. immigration purposes, and then second, that the divorce that Mr. Ahmed alleges was not valid for U.S. immigration purposes. Well, let me be clear here. Are you arguing that Petitioner was never validly married, or are you arguing that Petitioner was validly divorced? Well, I think there's an alternate argument here. It's ---- I suppose it's unclear or there's some argument about whether or not this customary law is recognized in Ethiopia. If it is, then the marriage was valid and the divorce was also valid, because those were both done in the same ---- under the Sharia law in the same way. On the other hand, if we say that customary law is not recognized, well, then that first marriage was not valid for immigration purposes. I suspect most likely, more than likely, what happened when Mr. Ahmed went into that consular office, the information was disclosed there that he had three children. And he leaves the blank, how many times were you married? He didn't lie about that. He didn't lie about that. He was perfectly open about that. Right. More likely than not, the consular officer is going to inquire into, well, where are these children from? What's the first ---- what's the relationship? And more likely than not, he concludes this was not registered under Ethiopian law, and, therefore, that first marriage was not valid for immigration purposes. Mr. Powell, I don't remember anything in the record that suggests that your client ever asserted that his first marriage was not valid. Is that anywhere in the record? Well, so what he says, he actually says at a couple of points that he had a legal wife. But whenever he says that, he says legal wife in accordance with the laws of Sharia. But from his perspective, he was legally married. From his perspective, he was legally ---- under his custom, he was legally married, and then he was legally divorced. I guess my point is, are you raising this for the first time on the appeal, the idea that he wasn't married before? I've never heard that before from your side. Well, in fact, you know, that was addressed in the appeal to the Board of Immigration Appeals the first time around. The immigration judge actually held that the failure to disclose that information does not constitute fraud or misrepresentation on appeal. To the first time around, his lawyer, his prior counsel, had argued that there was no false statement there. Could we just move forward for a bit? Because, you know, in the first hearing, the IJ rules in his favor, terminates proceedings, the government appeals, the BIA reverses and says no, IJ erred, sends it back down to the IJ to see if he's ---- well, they make it clear that he's subject to removal, but they say send it back down, he complied for any other relief that might be available. Correct. Fails to show at the hearing. Correct. We kind of know the circumstances of that. So why does all that end up ---- so this is a motion to reopen. It comes to us on a motion to reopen. So what are the exceptional circumstances that warrant reopening? Okay. Well, the exceptional circumstances, I think, fall under quite clearly the Ninth Circuit case, Ranjit Singh, which would indicate in this type of a situation where, you know, the respondent in the immigration proceedings has made efforts to comply, showed up before, has relief available, and ---- Ranjit Singh, completely different in this case, though, counsel. Singh had a situation where somebody, but for being late for the hearing by a couple of hours, had a perfectly valid visa. Your client is in a very different situation. Your client is an allegation that's been found by the BIA that your client fraudulently obtained a visa. Mr. Singh's children are in the United States. Your client's children are in Ethiopia. There are lots of differences in those cases, and Chief Judge Schroeder in Singh went out of her way to say this is an exceptional case. I don't see why Singh is applicable here. Can you help me with that? Yeah, sure. Well, first of all, Mr. Amadan is already a permanent resident. He has legal status in the United States, and he's fighting to preserve that. So it's not as if he has to file for a new benefit or new ---- in order to become ---- to get status in the United States, as was the case in Singh. He's there. That's true. If he is able to overcome the problem of the alleged fraudulent obtaining of that visa, isn't that correct? Well, that's correct. I mean, that's his ---- he has an argument to make about that, just as Singh had an argument to make about why she should obtain permanent status. Right. The other thing I think that is relevant with respect to Singh is that there's a minor violation, and the applicant is not responsible for missing the hearing or, if responsible, is responsible in a, you know, not a significant manner. That is to say, in Singh, the person made a mistake and was missed by a couple hours. In this case, Mr. Ahmedan got the notice the next day or within a couple days, and as soon as he gets that, he tries to fix the situation. He goes to a lawyer and says, look, I just received this. Please fix my situation. But the statute says that the notice can go to either the counsel or the applicant. In this case, it clearly went to the counsel. Do you not agree with that? Yes. So there's no question about the notice. He got notice as required by the statute. Right. He got notice. And that means that the immigration judge acted properly in entering the in absentia order of deportation. That's proper. What's improper, the statute, under the statutory scheme, it allows a relatively generous basis for reopening. Where there's a mistake like this that happens, where the Respondent in the proceedings does not receive notice, then the statute allows for reopening. But only under exceptional circumstances. There are two different circumstances. One is exceptional circumstances, and we argue the same case is on point there. Right. But there's also reopening for failure to notice, failure to get notice to the individual. To get actual notice. To get actual notice. And he had no reason for not appearing. It sounded as if he gained anything by not appearing. That's right. He had every reason, and he perfectly he always intended to comply and so forth. He's been pursuing this matter for quite some time. He's been pursuing it for a long time. And again, as soon as he gets notice, the next Monday, you know, he gets on Saturday and Monday morning, he's in the office trying to fix the situation. The Solson --- Do you want to save a little bit of time for everybody? I'll give you a minute. Okay. Thank you very much. Just one final question. Answer, Judge. Are you saying that the notice, the actual notice to the counsel is insufficient for purposes of this proceeding, that he had, that the Mr. Singh, Mr. Singh, Mr. Hussain actually had to receive the notice? Well, what I'm saying is this, that when the notice goes to the attorney, that's proper notice under the statute. And the immigration judge acts properly in issuing the in absentia order. That's all proper. But the statute also allows for reopening where there's no notice. And as in the Salta case where the person does not get actual notice, then the statute allows for reopening, even though the notice went to the attorney, the notice did not get to the respondent involved. But the facts of Salta are different, are they not? Well, they are a little bit different. That is correct. Okay. Thank you. I'll give you a minute. Don't worry. Okay. Mr. Rabin. May it please the Court. Good morning. Martha Rabin on behalf of the Attorney General. On the last issue, there are two exceptions, two ways to reopen an in absentia deportation or removal order. One is failure to receive notice in accordance to the requirements of the statute. Here, on that issue, the statute requirements were met. Not only was there's record evidence that, and it's not contested, that the notice went to his attorney, but he actually admitted that the attorney then sent that notice to him at the address he said where he received mail, but that it was then mislaid by his 14-year-old sister-in-law. So he actually did receive that notice at the place he was supposed to get it. So he got it through. The counsel agrees with you that, according to the statute, he received proper notice. The real question is, this is a motion to reopen. He was a permanent resident. He had spent years trying to regularize his procedure. The minute he learns of the mistake, he takes steps to correct it, not having received actual notice. The question is whether or not this would qualify him for reopening. Well, you're right. Yes. That would go to the second problem, which is under the statute, that says, well, are there exceptional circumstances for reopening? And so — Exceptional circumstances or failure to receive actual notice for good reason. I mean, and then he takes steps to correct it. But, okay, so the failure to receive notice for good reason would be subsumed under the exceptional circumstances. It's, you know, the statute gives an example, such as the alien being sick or the alien's family member dying or being severely sick. That is, there has to be some compelling reasons, not the fact that this alien moved from the address where he was supposed to receive his mail, never notified the immigration court, never notified his attorney, never called to verify what his — The case had been on appeal to the BIA for quite some time, hadn't it? Yes, Your Honor. So a number of years had elapsed from the time of his first immigration hearing until the time that the BIA sent it back down and we had — you know, people's lives changed, you know, during just one or — just a year. You're right, but — Relocate. And that's not — I mean, he's had an obligation to keep his lawyer informed, but he was married to a U.S. citizen, his wife was a U.S. citizen. He had been trying to regulate his — you know, regularize his status. What was the advantage of him not appearing? What was he trying to get out of it? Well, Your Honor — What would have been the benefit of not appearing at the hearing? I mean, I can't get into his set of mind, but — Well, just looking at it objectively, why would a reasonable person under those conditions miss the hearing? It was an inadvertent thing. Lack of diligence, due diligence, you know, possibly trying to avoid deportation. Why? Why would he want to avoid deportation when he has a — he's married to a U.S. citizen wife? Well, because, obviously, if his case went up to the board and it was reversed, then he'd be subject to deportation. So anybody that's — Well, it came back down — no, but it came back down and the BIA said, you're subject to — you know, he's — Mr. Hussain is subject to removal. That's correct. Right? Right. So — but that had — but he couldn't take that decision to the Ninth Circuit court of appeals because there was no final order of removal. So it had to go back down to the IJ, and the IJ had to enter an order of removal. And the BIA said, well, go back down and you can apply for any other relief that might be available to you. I don't know what other relief might be available, but they gave him that opportunity.  Right? So he doesn't show up at the hearing. But nonetheless, he's never yet had the opportunity to have that — that finding by the BIA reviewed by this court. No, no, he didn't. It merits. But he — his case was sent down to the immigration judge. Right, but he has to — but he needs to get an order of removal that he can challenge on direct appeal to us. And the only way he's going to do that is to — now that he failed to — there's an order in absentia entered against him. He has to get that set aside so that the IJ can enter an order of removal, so that he can go back to the BIA, so that they can deny him relief, and they can come to us on the merits of their determination. And when you get to the merits of their determination, which gets to whether or not the Ethiopian government recognized a — a customary marriage and divorce, and you look at what evidence was before the IJ at the time of the hearing, the original hearing, it is — I don't see how they could reach that conclusion on that evidence. Well, Your Honor, obviously the board disagreed, and, you know — Well, I want you to — well, let me just tell — if you look at that evidence, just look at this evidence that they have. Especially the Emory Law School website. I mean — Let's just take that for example, which is the main thing they apparently relied upon. Who prepared it? The — you're talking about who prepared it? Yeah. What was the source of the information? What was — who was the author? The authors of the — What was the basis for it? What constitutes Ethiopian law? Mm-hmm. There were three separate sources. One was — No, I want you to go to the Emory University website, this thing, whatever it is. Okay. 306. I'm there, Your Honor. Okay. So tell us, what's the source of this? It's a draft. What's it based on? Who's the author? But that is only one document. Then if you look at page 303 and then page 314, those are two separate documents. 303 is a document prepared by the Library of Congress. And what does that tell us? And that tells us that for divorces, the civil code of Ethiopia provides a system of family arbitration barred from customary law. The jurisdiction of courts is only subsidiary to the powers of family arbitrators. Therefore, parties can petition a court for divorce only if the arbitrators fail to make a decision within the period. So it sets out — Counsel, let me just on that particular point. If the divorce is invalid under Sharia law because it wasn't recognized, why wasn't the marriage invalid? Therefore, there would be no marriage and no divorce, and he would be perfectly — Again, Your Honor, I point you to the same document, which shows that Sharia marriages under the civil code of Ethiopia are treated differently than divorces. Sharia marriages, on the other hand, says Article 62 of the Code requires marriages to be recorded. However, if marriages that are not recorded in the civil statute may be proved by the testimony of four witnesses in court. So there is no disqualification for marriages that were not recorded. Whereas for divorces, there's a clear — not only does the Emory document show that there's arbitration that needs to be done, but also the next document, which is prepared from the State Department, that shows that — and this is on page 307 of the record. It talks about what is divorce, and it says, Couples seeking a divorce for serious or other cause must first appoint a family arbitrators who will attempt to effect reconciliation, and that it is a very drawn-out process. So there are separate documents of — that actually corroborate what the Emory University draft states what the Ethiopian law is supposed to be. And it's — Well, as you say, you just said it's supposed to be. We don't know what it's supposed to be. Let me go back to this. It says a customary marriage must be celebrated according to the formalities required by the customs of the community of the future spouses or the community of one of them. Okay, Your Honor. Okay. Then it says Article II of the code, which we don't know, you know, when Article II existed here, when Article II was adopted. Well, we know it's 1960. Okay. But it says requires marriages to be recorded. Are they talking about customary marriages? I don't know, Your Honor. You don't know. Okay. What I'm arguing here is that the Emory document, even though it indicates the draft, the requirements for divorce that are set out in the Emory document are then corroborated by both the Library of Congress document and the document from the State Department website. So when we are arguing as to whether or not the Board had any, when we go back to why is this relevant, it goes to the materiality issue, as Your Honor indicated. And the burden on the government is only to raise a fair inference, a fair inference that disqualification existed. You're trying to remove him from the country. He's a, he's a, he's got status. So isn't your burden, the government burden, a little bit higher here? Clear and convincing? Yeah, clear, convincing, unequivocal evidence. But before this Court, we wanted to show that substantial evidence in the record shows that. That there was clear and convincing evidence. That we, our burden here is to show substantial record evidence that the Board and the IJ had clear, unequivocal, and convincing evidence that the materiality issue was met by raising a fair inference that that disqualification existed in accordance with the Ethiopian law. That is, had the consular officer looked at this and really found out that the N.A.s were truly not N.A.s, that he was, in fact, previously married, he would have asked for, where's your divorce? Where's your certificate of divorce? Or what's the document of divorce? Or testimony of divorce? Or something. And that, that would have raised a fair inference that he had not been validly divorced. Because according to him, he obtained his divorce by having his three friends come over to his house. And he basically said, I'm divorced. Well, that's according to Sharia law. And he was married according to Sharia law. Yes, Your Honor. And that's all that's required, three witnesses. I divorce you, I divorce you, I divorce you, is all he has to say. But not under Ethiopian law. And that's what we're trying to show. And that's the question. Yes, Your Honor. My time is up, Your Honor. Thank you. Thank you. Just a couple of points, Your Honor. First of all, with respect to the notice and the comment about Mr. Ahmed on moving, it's perfectly appropriate under case law for a person to move and keep the same address. So the fact that the same mailing address. So the fact that he moved is really not relevant. That was an appropriate mailing address. And there's nothing wrong with his moving to another address. He clearly did receive mail there. And my own. Following up on what Judge Nelson said, is it your position that if a petitioner, let's take this one out of it, anybody, just say that they just sort of disappeared, nobody could find them for two months, but their counsel received notice, is it your position that you would have to wait for the two months for the petitioner to actually receive notice, him or herself, in order to be able to move forward in this proceeding? I don't know that the Court would need to address that issue about where to draw the line. But we would submit clearly where the person within a day or two is trying to sort things out. That's certainly adequate. So there is a line somewhere. You're just not sure where it is. But certainly if the person disappears for a couple years and then shows up, you know, it would be appropriate to deny the motion to reopen in that circumstance. Thank you, Your Honor. Anything else? Yeah. Nothing further unless there's some questions for me. Thank you, Your Honor. Thank you very much. We appreciate the arguments in this case. It's a very interesting case. Thank you very much.
judges: D.W. Nelson, Paez, Smith